[PHILADELPHIA, FEBRUARY 2, 1835.]

## WYNN Administrator of WYNN *against* BROOKE and others.

### IN ERROR.

A surety is entitled to reimbursement of the money which he has been obliged to pay for his principal, with interest; but he cannot speculate on his principal, and by compromising with the creditor for a sum less than the debt, and taking an assignment of it, compel the principal to pay him the whole amount of the debt. Nor can he, if he has unnecessarily incurred expenses in resisting the claim of the creditor, compel the principal to re-imburse him such expenses, even where the engagement is to indemnify the surety and keep him harmless.

Therefore, where real estate had been adjudged by the Orphans' Court to a son of an intestate who became bound, with two sureties, in bonds conditioned for the payment of the respective shares of the other children of the intestate, part of the money to be paid in one year from the date of the bonds, and the residue upon the death of the widow of the intestate (which was charged upon the land) and after the death of the widow, one of the children having brought suit against the administrator of one of the sureties, who, by pleading attempted to postpone the claim of the plaintiff upon the estate of the surety, till resort could be had to the land of the principal, which then had passed into other hands, and afterwards compromised the suit by paying the plaintiff one half the debt and interest, and all the costs of suit, and at the same time had the suit marked to the use of the intestate, to enable, as the agreement stated " the defendant to proceed against the land, without prejudice to his right as surety," the plaintiff at the same time acknowledging, by an instrument under hand and seal, to have received of the administrator of the surety, full satisfaction for the debt, interest and costs, and in consideration thereof assigning all his right, title, claim, interest, demand, security and lien upon the land, and all right of action against the then owners or terre-tenants and all other securities &c. for the debt ;

*Held,* That the administrator of the surety could only recover the money actually paid upon the compromise of the debt, with interest, but without any of the expenses incurred in resisting the claim of the creditor.

THIS was a writ of error to the Court of Common Pleas of Chester county, in an amicable action of debt instituted by *John Wynn*, administrator of *Jonathan Wynn*, deceased, against *Clement Brooke, James Johnson* and *Margaret Painter.*

After argument by *Dillingham* for the plaintiff in error, and *Bell* for the defendants in error, the opinion of the court (which contains a statement of all the material circumstances of the case) was delivered by

ROGERS, J.—This was an amicable action of debt in which a case was stated in the nature of a special verdict, and appears to have been this.

In the year 1806, the real estate of *Ezekiel Thomas*, deceased, was upon a valuation adjudged by the Orphans' Court of Chester county, to his son *William Thomas*, whereupon he with *William Vanleer* and *Jonathan Wynn* as his sureties, entered into bonds for the respective shares of the other children of *Ezekiel Thomas*, deceased, and amongst the rest one to *Elizabeth Thomas*, afterwards *Elizabeth Mervin*, in the penal sum of three hundred and five pounds thirteen shillings and four-pence, conditioned for the payment of one hundred and one pounds sixteen shillings and two-pence, in one year with lawful interest, and the further sum of fifty pounds eighteen shillings and six-pence upon the death of *Susanna Thomas*, the widow of the said *Ezekiel Thomas*, deceased. The first sum of one hundred and one pound sixteen shillings and two-pence, is admitted to have been paid; but the latter sum of fifty pounds eighteen shillings and six-pence remained unpaid during the life of the widow. The widow having died, *Elizabeth Mervin* brought a suit against *John Wynn*, administrator of *Jonathan Wynn*, upon the bond, which is joint and several, to recover of him as one of the sureties of *William Thomas*, the latter instalment of fifty pounds eighteen shillings and six-pence, the payment of which had been postponed to the death of the widow. The defendant *John Wynn*, as administrator of the surety, and who is plaintiff in the present case, resisted the claim of Mrs. *Mervin*, and among other things contended, that she ought not in equity to proceed against the surety until resort should be had to the land of the principal, *William Thomas*, which had been sold at a sheriff's sale, and was now owned and occupied by *Clement Brooke, James Johnson* and *Margaret Painter*, the present defendants. They also contended, that even admitting there was a lien under the act of assembly of 1794, which they denied, yet that the lien was discharged by the sheriff's sale. This defence was the subject of a special plea in bar, to which ·the plaintiff demurred, and on argument the court overruled the demurrer and gave judgment for the plaintiff for one hundred and seventy-nine dollars and ninety-two cents including costs. Whereupon the said plaintiff, by the advice of counsel, compromised the claim by the payment of ninety-six dollars and eighty-nine and a half cents on the 7th February 1832. At the same time the suit was marked for the use of *Jonathan Wynn*, to enable, as the agreement stated, " the defendant to proceed against the land without prejudice to his right as surety." And Mrs. *Mervin* further acknowledged under her hand and seal to have received from *John Wynn* the defendant, (described as *John Wynn*, administrator of *Jonathan Wynn* deceased) full satisfaction of the debt, interest and costs, in consideration whereof, she assigns, transfers, and sets over all her right, title, claim, interest, demand,

(Wynn Adm. *v.* Brooke et al.)

security and lien, upon the real estate adjudged to *William Thomas,* &c., and also all her right or cause of action against the present owners or terre-tenants of the same real estate, and all other her securities, pledges, liens or mortgages for the payment of the same debt of what nature or kind the same may be.

The parties having agreed upon the above points, submitted the questions of law, without regard to the form of action, and the questions were, whether the plaintiff was entitled to recover any, and if so, how much money from the defendants.

The first point has been faintly pressed although open to the defendants, notwithstanding the judgment of the court on the demurrer, in the suit between *Elizabeth Mervin*, and the administrator of the surety. In answer to the defendant's objections, it may be sufficient to observe, that all the questions have been already decided.    In *Medlar's Executors* v. *Aulenbach*, it is ruled, that by the act of the nineteenth of April, 1794, the widow of an intestate has a lien on the lands, taken at the appraisement in the Orphans' Court for the value of her purpart, the interest to be paid to her during her natural life.    And in *Fisher* v. *Kean*, 1 *Watt's R.* 259, it is also ruled, that the lien on land, which a widow has for her interest, by the intestate laws, is not divested by a sheriff's sale of land, upon a judgment whose lien has been subsequently obtained. The same principle will protect the lien of the heirs from the effect of a judicial sale.    There is then no doubt that the plaintiff has a right of action, and the only question which remains is the extent of the defendant's liability, and on this branch of the case, two questions have been submitted.    First, as to the extent of the defendant's liability on general principles, and secondly, under the peculiar circumstances of the case.

As to the first.    It is admitted, that where the surety pays the debt, the law implies a promise on the part of the principal, to repay the money paid, with interest, but it is said that without an express stipulation, that is all he can require.    In this position the defendant's counsel are supported by *Vance* v. *Lancaster,* 1 *Hayw. Ten. R.* 130.    *Copp* v. *M'Dugall,* 9 *Mass. R.* 1, and *Simpson* v. *Griffin,* 9 *John. R.* 131.    In *Simpson* v. *Griffin* it was decided, that the payee, indorser of a note, who has been sued by the indorsee in default of the maker, cannot compel the maker to pay the costs of such suit.    The maker is liable to the payee for the amount of the note only.    The mere fact of drawing the note does not imply a promise to save harmless from all costs and charges, that he may be subjected to as indorser.    There must be a special promise, to save harmless before the payee can call upon the drawer for costs, accrued by the default of the payee himself.    As payee, he can only look to the drawer for the amout of the note.    So in *Copp* v. *M'Dugall,* where an indorser of a promissory note has incurred expenses in a suit against the maker, in which he has failed, the

(Wynn Adm. *v.* Brooke et al.)

indorser is not liable on his indorsement, for these expenses or for any damages beyond the amount of the principal and interest of the note. The case of *Smith* v. *Griffen* carries the law to a greater extent than it has been perhaps in England, and certainly further than in Pennsylvania, but nevertheless it serves as a strong illustration of the principle of the difference between an implied and express contract. The strictness of the rule as to costs, is intended to enforce punctuality, which is so important in mercantile transactions, and which perhaps, would not even there be held to extend beyond mercantile paper. In Pennsylvania we have allowed a payee indorser to recover legal costs in addition to the money paid and interest, but this is the extent to which the courts of this state have gone, on an implied promise. Several cases have been cited by the counsel for the defendants, but all of them are on express contracts, to indemnify and save harmless, unless the case *ex parte Marshall*, 1 *Atk.* 262, is an exception. This case seems not to be fully or accurately reported; but if the expenses which were allowed to be proved under the commission were legal costs, then there is nothing inconsistent with the modern decisions which allow a surety to recover such costs. But if the chancellor means to say that if a surety disputes a just debt, and occasions an expense by that means, he shall charge the estate of the principal with other than the costs of the suit, then I answer, that the case has been overruled in more modern cases. I agree, that the surety can recover costs, because it cannot be supposed that a surety is ready at all times to pay the money, and it is but just, that he should recover costs, which have been incurred, as well on account of his principal's default as his own. But it would be going further than good policy requires, to say that other expenses, counsel fees, for example, should be recovered, as that would put it in the power of the surety, to indulge an appetite for litigation at the expense of his principal, and it would be particularly hard, where the surety had not thought proper to give the principal notice of the suit, and of the defence. If the law is, as is contended for by the counsel for the defendants, there is no difference between an implied contract and an express contract of indemnity; and that there is a material distinction between the two, is shown by the cases already cited. *Powel* v. *Smith*, 8 *John. R.* 192. *Simpson* v. *Griffin*, 9 *John. R.* 131. *Copp* v. *M'Dugall*, 9 *Mass.* 1, and *Hayden* v. *Cabot*, 17 *Mass. R.* 169. The principle fairly deducible from the cases, is, that without an express contract of indemnity, a surety who pays the debt of his principal, can only require the money actually paid by him with interest and costs, to be refunded. And here it is proper to notice a position taken by the plaintiff's counsel, who contends, that *John Wynn* has a right to recover the whole amount of the lien because he is a purchaser of the whole claim. To this it may be answered that he does stand in that relation, but as the representative of the surety who has paid the debt,

(Wynn Adm. *v.* Brooke et al.)

and of course that he can be in no better situation than the surety himself would have been, had he paid the debt.   But a surety stands in such a relation to his principal, that he cannot be permitted to speculate upon him.

It remains now, to inquire how far the general principle as above asserted, is affected by the particular circumstances of this case. The defendants purchased the property at a sheriff's sale subject to a lien of fifty pounds eighteen shillings and six-pence, under the act of 1794, in favour of the widow and heirs.   In *making* the purchase, the presumption is, that an eye was had to this liability, which entered into the price bid for the land.   *In* other words, the purchasers gave one hundred and *seventy-nine* dollars and ninety-two cents less, than they would otherwise have been willing to pay. It is therefore obvious that so far as regards that amount, they are in no better if so good a situation as the principal himself.   It is also equally plain, that they have not been injured by the compromise, for had no arrangement been made, they would have been compelled to pay one hundred and seventy-nine dollars and ninety-two cents, whereas the sum demanded, is only one hundred and fifty-six dollars and eighty-nine cents.   By the assignment, *John Wynn* is subrogated to all the rights of the original creditor, and it cannot be doubted according to the cases cited, that the creditor had a lien on the fund to the whole amount of the judgment on the demurrer. But the defendants allege that although, true it is, they are liable for that sum, yet, that *it is inequitable in the surety to exact the* whole amount inasmuch as he only paid seventy-nine dollars.

But this allegation can only be made in a court of equity, and he who asks equity, must do equity ; and it seems to us nothing but justice, to compel the defendants to reimburse the reasonable expenses incurred in procuring a benefit of which they seek to avail themselves.   It would certainly be just, as between the surety and the principal debtor, and to the amount of the liability of the fund in their hands, there is nothing to distinguish their case, from that of the principal debtor.

Judgment reversed, and judgment entered for the plaintiff for one hundred and eighty-three dollars and seventy-six cents.