## Unangst *against* Kraemer.

A suit after the widow's death to recover the principal sum of her dower charged on land sold by the administrator under the order of the Orphans' Court, one-third of the purchase money to be paid on the confirmation of the sale, one-third in one year thereafter with interest, and one-third to remain charged on the premises for the use of the widow, may be brought either by the administrator to whom the bond was given or the heir entitled.

The suit ought to be brought against the purchaser at the Orphans' Court sale, who gave his bond to the administrator, or one who purchased of him by a later conveyance of the land chargeable with the money and gave a similar bond, with notice to the terre-tenant in both cases.

Such terre-tenant is not liable unless he took upon him the payment, and then he is personally bound.

This case distinguished from *Pidcock* v. *Bye.*

The defendant in such suit, after the two first instalments have been paid, cannot object to irregularity in the proceedings of the Orphans' Court in ordering the sale.

This court will not reverse for an error which does no injury to the party complaining.

The court may instruct the jury to disregard evidence which is afterwards discovered to have been improperly admitted. If it appear that the jury have not followed this instruction, the proper course is a motion for a new trial.

It is evidence to rebut the presumption of payment in such case arising from the lapse of twenty years since the widow's death, that the bonds were not given up and some payments were made, though it does not distinctly appear they were on that account.

ERROR to the Common Pleas of *Northampton* county.

This was an action of debt brought on the 22d July 1842, by Henry Kraemer, administrator of Henry Kraemer, deceased, against Joseph Unangst, to recover $390.76, the principal sum of the dower of the widow of the plaintiff's intestate. The declaration stated that the plaintiff's intestate died about the 1st February 1795, seised of a tract of land, &c., which was afterwards sold under an order of the Orphans' Court, subject to a charge of one-third of the purchase money for the use of the widow, and that a deed for it, dated 15th July 1815, was given by Henry Kraemer, the administrator, to John King, who on 26th August 1815 conveyed to Nicholas Kraemer, who on the 3d April 1816 conveyed to Mathias Gress, who conveyed to Joseph Unangst, September 9, 1816. That Unangst and those from whom he claims took the premises subject to the payment of $390.76 to said administrator on the death of the widow, and also to the sum of $23.54 payable to the widow annually during her life. That when John King received his deed, to wit: 15th July 1815, he made his bond in the penal sum of $781.50, conditioned for payment of $390.76 at and immediately after the decease of the widow, together with

the interest on the same, to the said Henry Kraemer, administrator. That when Nicholas Kraemer bought : viz. August 26th 1815, he made his bond in the same sums, and payable in the same way, and which said last bond was transferred to the administrator in lieu of the bond received from King, and of all which Unangst and Gress had notice. That the widow died on or about August 1st 1827, when the said sum of $390.76 became payable by Unangst.

The second count stated that the defendant, on the 1st July 1842, was also indebted to said administrator in the sum of $781.50, for interest upon and for forbearance of large sums lent and advanced to him by the said administrator, and that none of these monies had been paid, although often requested, etc., and made profert of letters of administration.

The defendant pleaded payment with leave, &c., and gave the following notice of special matter; " That the defendant will offer evidence to prove that Henry Kraemer, the elder, was not seised in his demesne as of fee in the premises mentioned in the plaintiff's declaration, and that the said intestate in fact had no lawful title thereto. That he does not claim the premises mentioned and described in the plaintiff's declaration, by, from or through the said intestate, but by a title altogether independent of the said Henry Kraemer and derived from the proprietaries of Pennsylvania or their legal representatives."

From the record evidence given by the plaintiff, it appeared that Henry Kraemer, the intestate, died in 1795, seised of a tract of land in Bethlehem township, Northampton county, subject to the payment of the purchase money due to the proprietaries, being part of the manor of Fermor. He left a widow and seven children. On petition of one of the heirs, the Orphans' Court on the 21st January 1814 awarded an inquest, which on the 22d April following was returned and confirmed, finding that the premises could not be divided, and appraising the same at $1133.20. On the 19th August following, a rule was granted on the heirs to accept or refuse, &c., returnable at the next term. On the 21st January 1815 the rule, not having yet been served, was enlarged to the 4th February following, when proof of service of the rule personally on all the heirs being made by the petitioner, the court awarded an order of sale to take place on the 11th March following, one-third of the purchase money to be paid at the confirmation of sale, one-third in one year thereafter with interest, and one-third (remainder) to remain charged on the premises for the use of the widow. On the 21st April following, the administrator reported that on the 11th March then past he had sold the premises to John King for $1172.29 on the terms and conditions prescribed by the court. This sale was confirmed same day.

The plaintiff produced a deed for the premises from Nicholas Kraemer to Mathias Gress, dated April 3d 1816. Also a deed

[Unangst v. Kraemer.]

dated September 9th 1816 from Mathias Gress to Joseph Unangst, endorsed on the deed from Kraemer to Gress, subject to the payment of the original purchase money to the proprietaries, and reciting that Henry Kraemer had conveyed to John King, who by deed poll, dated August 26th 1815, had conveyed to Nicholas Kraemer.

1. The plaintiff offered in evidence a bond, dated August 26th 1815, from Nicholas Kraemer to John King, for the sum of $390.76, payable at the death of the widow of Henry Kraemer, deceased, with interest payable annually; after having proved the handwriting of Mathias Gress as a witness to the bond, and that Gress was dead.

The defendant objected to this offer, but the court admitted the bond and sealed an exception.

The plaintiff proved that the intestate's widow died on the 22d July 1822.

The plaintiff called a witness, who testified that he knew that Kraemer owned the tract in question, and that Unangst bought it, as much as he knew, of Mathias Gress. Witness hauled 1000 rails, and Unangst said he was hauling these rails, and he did not know if it was his.

2. The witness was then offered to prove that Unangst said there was a dower in the land, to which the defendant objected, but the court overruled the objection and the defendant excepted.

The witness then stated that this conversation took place at the time Gress owned the land — before Unangst owned it. The evidence was afterwards excluded by the court.

The plaintiff then called Solomon Kraemer, who testified as follows:— "About the 16th June 1842 I went with my father (the plaintiff) to Joseph Unangst. Unangst came to the door and they went into the house, and after some time came out again. Unangst and my father came down to the fence and there they parted. My father asked Unangst ' about the middle of August?' Unangst answered ' yes.' I called on Unangst about the 29th June the same year, at my father's request. I asked him, ' did you promise my father to come to settle about the middle of August?' He answered ' yes.' I told him that was a bad time, it would then pass over the 20 years. I asked him, ' will you pay a small sum on the dowry and acknowledge the debt, and then make your own time to settle?' He said, ' if you and your father won't trust me.' I said, ' we do trust you.' He said, ' I don't know any thing of 20 years; I thought a dowry was always good.' I said ' I thought so too, but judgments run out in 20 years; I had been to Easton to inquire about Kreidler's debt and also about this.' He asked me, ' one share is coming to your father?' I replied, ' my father holds the bond, is administrator, and the bond, it must be paid to him.' He said he paid Nicholas and had taken a release from him. I asked him, ' young Nicholas?' He replied, ' Con-

rad's son.' I said ' he had no right, it must be paid to my father.' We parted. Then I asked him, ' about the middle of August you will come to settle?' He replied ' yes, perhaps sooner, the first of August.' We parted then."

3. The plaintiff then offered to prove by a witness that the defendant paid this money to young Nicholas Kraemer, son of Conrad. The defendant objected, but the court overruled the objection and sealed an exception.

The witness then stated that three or four years previously Unangst paid Nicholas Kraemer, the son of Conrad, in the neighbourhood of $40; that Nicholas took it, signed and gave a release, and asked if it was right, and Unangst said yes. Nothing was said what it was for, when they were together.

4. The defendant then called a witness, who testified that the knowledge he had of the death of the intestate's widow was from a tomb-board erected. The defendant offered to prove by him that on her tomb-board she was stated to have died on the 20th July 1822; that the board had rotted away. The plaintiff objected, and the court rejected the evidence and sealed an exception.

5. The defendant then offered to prove that at the last trial of this cause the plaintiff alleged and proved that the intestate's widow died on the 20th July 1822. The plaintiff objected, the court sustained the objection, and the defendant excepted.

A witness for defendant testified as follows: — " Henry Kraemer was examined in a suit by me against Regina Kraemer in 1819. I claimed as purchaser at a sheriff's sale as the property of Nicholas Kraemer; it was a 2½ acre lot in Hecktown where the widow died. He testified that Nicholas Kraemer gave Regina that lot for keeping the old lady, the widow of Henry Kraemer, deceased." Cross-examined, " I did, as administrator of Elizabeth Kraemer, bring suit to recover the arrears of dower."

6. The defendant then offered in evidence a deed dated 19th January 1818 from the proprietaries to Joseph Unangst for the land in question. The plaintiff objected, the court sustained his objection, and the defendant excepted.

The court charged the jury as follows: — The Orphans' Court sale transferred the decedent's right in the land to King; for this right he agreed to pay $1172.29. By the order of the court the one-third of this sum was to remain charged upon the land until the widow's death. She died the 21st or 22d July 1822. The widow was entitled to the interest on this sum during her life. This sum was a lien on the land in the hands of King. It was made a lien by law. This lien would continue against his grantees until it was paid by the parties or discharged either by them or by operation of law. Has this sum been paid? There is no proof of actual payment. Has it been discharged by lapse of time? Twenty years delay in this case, if unaccounted for, would entitle the defendant to a verdict. This is a rule of law established as

[Unangst v. Kraemer.]

being necessary to the peace of society and the security of individuals. No one is permitted to let his claim rest until it has become obscured with uncertainty. It is then too late for fair inquiry. Justice cannot then be done, parties may be dead, witnesses may be gone or dead, memory may fail or prove treacherous, papers may be lost, vouchers may be given up or destroyed. If the 20 years have not elapsed, it is incumbent on the defendant to make out his defence by proof; then something is requisite on his part with the length of time to make out his case. If the 20 years have elapsed, this would be a good defence, and then it throws the proof necessary to remove it upon the plaintiff. Here the defendant lived on the land; he was at all times able to pay this debt. The land was always good for it. The plaintiff lived near him; why then all this delay if the debt was justly due? The bond of King has not been shown; where is it? It may have been paid; if so, how and when and by whom and under what circumstances, might be of importance if it had been shown. Has a demand been made within the 20 years? If it has, this might satisfy you. An acknowledgment of the debt no doubt would. What then has been proved by the witness Kraemer? Does it amount to a demand of this debt? This is a fact for you to decide. If it does, it would rebut the presumption of payment. Does this witness prove an acknowledgment of the debt? If he does, this would rebut the presumption of payment.

The defendants have requested us to charge you:

1. This suit is brought wrong. The proper parties are not brought into court. *Answer.* The suit is correctly brought. The proper parties are brought into court. The sale was made by the administrator. The promise to pay was made to him. The suit was therefore properly brought in his name.

2. There is no evidence that Joseph Unangst ever took upon himself the payment of the sum claimed in this suit. *Answer.* This point in point of fact is true. The money was charged upon the land. It is the land that stands charged with the debt. This suit is to recover this money out of the land. The defendant is not personally a debtor, nor will this suit make him personally liable. The suit is therefore rightly brought against him; and if the debt has not been discharged by payments, presumed from the circumstances or lapse of time or both or by actual payment, the plaintiff is entitled to a verdict, which would only charge the land in the defendant's hands.

3. The Orphans' Court was not warranted by law to grant the order of sale, because the rule on the heirs was not served for 20 days, and because there was no security given by the administrator. *Answer.* Neither reason will avail the defendant. Those objections cannot now defeat the payment of the money. In these things he has no concern. He has held the land for more than 20

years. We do not give our assent to this point. If it be law, then defendant would hold the land, and it not paid for.

4. That if the debt were due, Kenry Kraemer cannot recover in his capacity of administrator; it would be due to the heirs and legal representatives of Henry Kraemer the elder deceased. *Answer*. We refuse to charge as requested on this point.

5. That if the widow even died on the 22d July 1822 and this suit was brought on the 22d July 1842, the legal presumption of payment would arise, unless repelled by evidence. *Answer*. The computation is to be made from the time the money became due. It might then have been demanded; it might have been demanded on the 22d July 1822, and therefore the 20 years would expire on the 21st July 1842. This would complete the legal presumption of payment and will entitle the defendant to a verdict, unless the presumption has been repelled by the evidence given on the part of the plaintiff. To this point therefore the court give their assent.

6. The sum claimed was not a lien on the land in the hands of Joseph Unangst. *Answer*. It was made a lien by the law and the order of the court. This lien adhered to the land into whomsoever it passed by grant from the purchaser at the sale, until paid or discharged by the parties or by operation of law.

The defendant and plaintiff objected to the charge.

The plaintiff requested the court to charge the jury:

1. By the pleadings in this case the defendant admits that he took the land subject to the charge of one-third of the sum of $1172.29, and is confined to proof of payment made subsequent to his purchase from Gress. *Answer*. He may show it is paid in fact or discharged by lapse of time. The rest agreed to.

2. That if the 20 years had not elapsed when this suit was brought, and if one day were wanting to complete the time, the jury have no right to presume payment without some evidence on the part of defendant, tending to prove payment. *Answer*. This is correct.

3. That this suit having been brought within 20 years, and defendant having given no evidence of payment, the jury are bound to presume the debt unpaid. *Answer*. This is not assented to.

4. If the 20 years have expired before suit brought, the evidence of Solomon Kraemer (if believed by the jury) is sufficient to rebut the presumption of payment. *Answer*. This must be determined from this evidence, with all other circumstances in the case.

Errors assigned:

1. The court erred in admitting the evidence mentioned in the 1st, 2d and 3d bills of exception.

2. In rejecting the evidence mentioned in the 4th, 5th and 6th bills of exception.

[Unangst v. Kraemer.]

3. In their answers to the defendant's 1st, 2d, 3d, 4th and 6th points.

4. In their answers to the plaintiff's 1st and 4th points.

*Ihrie* and *J. M. Porter*, for the plaintiff in error.

1st bill. The bond offered in evidence was not given under or in pursuance of any order of the Orphans' Court by the purchaser, but by another person substituted without order of the court.

2. This was confessedly improper evidence, yet it was admitted by the court. Their exclusion of it afterwards could not cure the error, as it was not in the power of the court by so doing to efface the impression made by it on the minds of the jury. *Nash* v. *Gilkeson*, (5 *Serg. & Rawle* 352).

3. This evidence of money paid was irrelevant until it was first shown the alleged payment was made on account of the dower.

4, 5. The evidence offered by us of the knowledge of the death of the widow, obtained from the tomb-board, as well as the plaintiff's assertion on a former trial, was admissible. The proof of death is like that of pedigree, and the dates of births and deaths are proved in the same manner as pedigree is. *Douglas's Lessee* v. *Sanderson*, (2 *Dall.* 118); 3 *Stark. Ev.* 1100, 1115; 2 *Cowp.* 594; 2 *Saund. Pl. & Ev.* 556; *Greenl. Ev.* 117.

The suit should have been against John King who was the original debtor, in conjunction with the terre-tenant. If not, then, at least, Nicholas Kraemer's representatives (if he was the purchaser) should be parties with Unangst, that they might have an opportunity to show that the money was paid by Nicholas Kraemer or released. The widow might have released. It is like a suit for a legacy charged on real estate, in which the executor must be sued as defendant, with notice to the terre-tenant, as has been decided in several instances, and is now the established law. *Brown* v. *Furer*, (4 *Serg. & Rawle* 213); *Brown* v. *Webb*, (1 *Watts* 414).

The Orphans' Court had no jurisdiction, because due notice had not been given according to the Act of 2d April 1804. The defendant is a stranger to the proceeding, and may question its regularity collaterally. *Hampton* v. *Speckenagle*, (9 *Serg. & Rawle* 220); *M'Donald* v. *Campbell*, (2 *Ib.* 473); *Messinger* v. *Kintner*, (4 *Binn.* 97, 103); *Richter* v. *Fitzsimmons*, (4 *Watts* 251); *Snyder* v. *Markel*, (8 *Ib.* 416); *Act of 29th March* 1832, *Purd.* (1841) 808.

The suit should have been brought by the heirs, or for the use of the heirs; the defendant could then have credit for the money paid to Nicholas. No charge on land is authorized by the Act of 1804 in case of sale to another purchaser; it can only be by order of the court.

*Maxwell* and *Reeder*, contra. The sale to Unangst was ex-

[Unangst v. Kraemer.]

pressly subject to the payment of the original purchase money to the proprietaries, and the widow's third was a charge running with the land, into whosesoever hands it should come. *Medlar* v. *Aulenbach*, (2 *P. R.* 358); *Pidcock* v. *Bye*, (3 *Rawle* 183); *M'Carty* v. *Gordon*, (4 *Whart.* 327); *Hawk* v. *Geddis*, (16 *Serg. & Rawle* 28); *Geddis* v. *Hawk*, (1 *Watts* 280). The Act of 2d April 1804, Section 2d, authorizes a sale subject and liable to the payment of the purchase money according to the terms of sale. The suit is properly brought. *Long* v. *Long*, (1 *Watts* 269). The parties are right. The administrator sold and was entitled to receive the money, settle it in his accounts, and charge his commissions, and he did so. There is no reason why he should not collect the one-third as well as the rest. The law as to suing for legacies charged on land has no application. The reason in that case is, that the land is liable for the debts of the decedent, but there are no creditors here that can have a claim after the Orphans' Court sale. The plea is payment with leave, and notice is given of the special matter, viz: that the defendant held by an independent title. That plea admits the cause of action. *Lewis* v. *Morgan*, (11 *Serg. & Rawle* 234); *Gilinger* v. *Kulp*, (5 *Watts & Serg.* 264). His deed from the proprietaries, under which he asserts title in his notice, is the very title he bought subject to. That deed has never been put on record, and he is not to be considered as claiming under it without putting it on record. *Penrose* v. *Griffith*, (4 *Binn.* 231); *Plumer* v. *Robertson* (6 *Serg. & Rawle* 185). Every man is bound by the recorded evidence of his title. The validity of the decree of the Orphans' Court cannot be disputed in a suit on the bond. On a judicial sale there is no warranty of title. The decree is binding till reversed, except in cases of fraud and collusion. *M'Pherson* v. *Cunliff*, (11 *Serg. & Rawle* 431); *Groff* v. *Groff*, (14 *Ib.* 181); *Messinger* v. *Kintner*, (4 *Binn.* 103); *Thompson* v. *M'Gaw*, (2 *Watts* 164); *Bashore* v. *Whisler*, (3 *Watts* 490).

1st bill. The bond is evidence to show it unpaid.

2. Any error here committed was rectified by the subsequent act of the court excluding the evidence. *Bank of Pennsylvania* v. *Haldeman*, (1 *P. R.* 161).

3. This evidence goes to rebut the presumption by showing payment on account.

4, 5. The time of a person's death cannot be proved by such evidence. It was no better than hearsay, which cannot be received to establish an independent fact, of which there is always better evidence in existence. It is entirely different from a question of pedigree, which is governed by peculiar principles. *Norris's Peake's Evid.* 24; 7 *Cranch* 190; 1 *Wheat.* 128; 5 *Cow.* 320; 8 *East* 542; 2 *Stark. Ev.* 611.

They also cited *Green's Appeal*, (6 *Watts & Serg.* 328); and *Delany* v. *Robinson*, (2 *Whart.* 503); to show that the twenty

[Unangst v. Kraemer.]

years had not elapsed since the widow's death so as to create a legal presumption of payment.

The opinion of the Court was delivered by

ROGERS, J.—This is an action to recover $390.76 charged on the defendant's land to secure the widow's dower, the interest to be paid to her during life, and the principal after her death. It is not brought against him personally, but in respect to the land of which he is the assignee and owner, and for this purpose it has been ruled in *Pidcock* v. *Bye*, debt or assumpsit, under certain circumstances, is an appropriate remedy, the court taking care to give such a judgment as shall affect the real estate only, charged with the payment.

The principal grounds of defence are that the suit is improperly brought, and that the money has been paid. Under these heads the objections taken at the trial may be properly arranged.

It is contended first that the suit must be brought in the name of the heirs to whom the money after the death of the widow belongs, and not, as here, by the administrator. The property was sold by the administrator under the order of the Orphans' Court, one-third of the purchase money to be paid at the consummation of sale, one-third in one year thereafter with interest, and one-third to remain charged on the premises. Now to whom is the purchase money to be paid but to the administrator, who is the agent of the court and directs the sale, who is bound to pay all the expenses attending it, and to distribute the money when received, after deducting an adequate compensation for his services? No difference in these respects is perceived between the first and second instalment and the residue remaining charged and unpaid until after the death of the widow. But as to the former, it will not admit of doubt he is entitled to receive it in his fiduciary character, and if so, to recover it by suit. There is a convenience in this form, as it supersedes the necessity of bringing as many suits as there are heirs. In judicial sales made by sheriffs, which is an analogous case, when the purchase money is withheld, a suit lies in the name of the sheriff against his vendee. Nor do I perceive any insuperable objection against an action either by the administrator or the heirs; for whether the one mode or the other be adopted, it is the same to the defendant, who will be protected in either case against another action.

But it is said that this suit should be brought against John King the purchaser, or the administrator of Nicholas Kraemer, with notice to Unangst as terre-tenant. The property was sold by the administrator to John King, who was returned to the Orphans' Court as the purchaser. John King by deed-poll conveys the property to Nicholas Kraemer, who is since dead, who conveyed to Mathias Gress, who conveyed to the present defendant. It is contended that John King or the administrator of Nicholas Kraemer

[Unangst v. Kraemer.]

should be made parties, as one or other of them is personally liable for the purchase money; and this position we think right; first, because they may show that the money was paid; and next, because in the absence of any proof of contract to the contrary, they are primarily liable to pay the amount due. The land is only chargeable in the hands of the terre-tenant after failure to obtain payment from the original purchaser; I mean as between him and the terre-tenant. On principle, therefore, the mode of bringing the action is by suit against the original debtor, whether it be John King or the administrator of Kraemer, with notice to the terre-tenant. If there was evidence that Unangst took upon himself the payment of the money, it would present a different case. The court in effect in the 1st and 2d points was asked to charge the jury that inasmuch as there was no proof that Joseph Unangst ever took upon himself the payment of the sum claimed, the suit cannot be sustained. The court acknowledged the fact to be as stated, but notwithstanding instructed the jury that the action will lay, inasmuch as the defendant was liable in respect to the land, but not personally. The point would seem to be ruled under a misapprehension of the case of *Pidcock* v. *Bye*, (3 *Rawle* 185), which was decided under peculiar circumstances, this case furnishing an exception rather than the general rule. In that case Bye was bound to pay the money. He was, as respects those under whom he claimed, the principal debtor. It was part of the purchase money of the estate, and unlike in those essential particulars the case of a legacy charged where the purchaser takes the land subject to the charge. As between Bye and those under whom he claimed, he became the debtor. Under the peculiar circumstances the court decided that assumpsit, which is an equitable action, will lie without an express promise to the plaintiff to pay; or in other words, that the law under such a statement of facts implies a promise to pay. The plaintiff's counsel, with some reason, complained that if there was error in the judgment, it was against the plaintiff, for it was entered so as to bind the land only, whereas the defendant was personally bound. It would be difficult to assign any reason why any other person should have been made a party. He had taken on himself the payment of the money, and at the same time was the owner and terre-tenant of the land. It is clearly distinguishable from *Brown* v. *Furer*, (4 *Serg. & Rawle* 216); *Gause* v. *Wiley*, (4 *Serg. & Rawle* 523); and *Nailer* v. *Stanley*, (10 *Serg. & Rawle* 450). In order, therefore, to succeed on another trial, it will be necessary for the plaintiff to show that the defendant, in respect to those under whom he claims, is the principal debtor, that the sum charged on the land to secure the widow's dower was part of the purchase money which he, Unangst, agreed to give for the land.

Next as to the plea of payment. On the trial it became important to prove that twenty years had elapsed from the death of the

widow until the commencement of the suit. The action commenced on the 22d July 1842, and a difficulty was made on the trial whether the widow died on the 20th or 22d July 1822, and on that point the evidence contained in the bills of exception, Nos. 4 and 5, was offered and rejected by the court. But the evidence was wholly immaterial, and so the court instructed the jury; for whether the widow died on the 20th or 22d, the twenty years had expired, which made it necessary for the plaintiff to rebut the presumption of payment arising from lapse of time. Now although we are of opinion that the evidence was improperly rejected, yet we never reverse for an error which we are convinced does no injury to the party complaining.

The evidence contained in the 1st and 3d bills was rightly admitted, because it was proof proper to be submitted to the jury to rebut the presumption of payment arising from lapse of time; for if the money was paid, why was not the bond given by Nicholas Kraemer to John King given up? and if discharged, why was payment made by the defendant to Nicholas Kraemer the younger, unless on the supposition that his share still remained due? It is no answer that it does not with certainty appear it was in payment of this debt; for the jury might and perhaps ought to infer this from the facts proved, as there was no evidence of any other dealings between them.

Under a mistaken supposition that the declaration was made after the defendant obtained his title, the court erroneously permitted the plaintiff to prove that the defendant said there was a dower in the land, but afterwards discovering that at the time he had no interest, they directed the evidence to be excluded. It is said that the court having committed an error in admitting the testimony, it cannot afterwards be corrected by directing the jury to disregard it. And such undoubtedly is the decision of the court in *Nash* v. *Gilkeson*, (5 *Serg. & Rawle* 352). The reason given is that the impression made by the evidence could not in the nature of things be entirely removed; at least, as is said, the court could not be judicially certain that it had not some effect on the mind of the jury, and the quantum of that effect is immaterial, provided it had any. With great respect, I am inclined to think that the rational presumption is that it had no effect whatever, as we are not at liberty to suppose the jury would disregard the direction of the court. And if it appeared that they did so, the remedy, and it is an effectual one, is in a motion for a new trial. The practical effect of the decision is that whenever the court has inadvertently made an erroneous decision they cannot correct it, and the only course which remains in justice to the party in whose favour the mistake is made, is forthwith to discharge the jury. This, it is plain, would seriously interfere with the course of business; for although the party might get a verdict, yet it would be of no avail, as his judgment must be inevitably reversed. Is it not therefore

[Unangst v. Kraemer.]

better to leave the correction to the court which tries the cause, who will grant a new trial, if there is the least reason to suppose it had an improper effect on the minds of the jury.

The objection to the regularity of the proceedings of the Orphans' Court in ordering the sale cannot avail the defendant. The court had jurisdiction over the subject-matter, and their decree is conclusive; it cannot be controverted in a collateral suit. Besides, if the rule, as has been alleged, was not served on the heirs, the irregularity may be waived, as was the case here. All the purchase money has been paid except the money now in suit. It would therefore be incompetent to the heirs now to question the title. As they are estopped the defendant cannot be permitted to take this objection, as this would give him the land and the money too.

The deed from the proprietaries was properly excluded. It furnished no defence, as the defendant took his title expressly subject to the original purchase money. It is not a different but the same title, consummated by the proprietary deed.

Judgment reversed, and *venire de novo* awarded.