## McIldowny *versus* Williams *et al.*

The declarations of a person not in possession of the land, nor the owner of it at the time the declarations are made, cannot be received to impeach a title derived from such person, especially if not made in the presence of the party against whom they are offered, or communicated to him afterwards.

A person will not be received as a witness to impeach or destroy a title conveyed by his own deed.

The declarations of a party while holding the legal title, may be given in evidence against his grantee, but where the vendee has accepted a conveyance without any knowledge of such declarations, it is for the jury to say to what extent he shall be affected by them.

If there be any evidence at all of a disputed fact, it must be submitted to the jury; and where such evidence is circumstantial and there are facts on both sides, it is peculiarly the duty of the jury to determine their weight and value.

ERROR to the Common Pleas of *Bedford county*.

This was an action of ejectment brought by Maria McIldowny against Samuel Williams, Hilly Smith, Hester Barclay and others.

The plaintiff claimed the land in dispute, under an improvement right of her husband, Robert McIldowny, commenced in 1826. On the 2d September, of that year, a judgment was obtained against him, and, in pursuance of executions issued upon it, his interest was levied and sold by the sheriff to George James, to whom the sheriff acknowledged a deed on the 29th November, 1828, and on the 24th February, 1845, he transferred the same by an endorsement on it to John A. Smith, agent for Maria McIldowny, for her own separate use.

On the trial, in the court below, George James testified that he purchased the property at the instance of John A. Smith, and that Smith had paid the purchase-money, and that the transfer to Mrs. McIldowny, was made by him at the request of Smith.

John A. Smith testified that McIldowny, previous to his settlement on this land, had lived on another piece of land under a lease from the witness, and that while he was in possession the land was recovered by ▓▓▓▓ parties, whereby McIldowny had been subjected to cost▓ ▓▓ ▓xpenses, and that in payment or settlement of these he ha▓▓▓▓cured James to purchase the land, and had paid the purchase-money for the purpose of conveying it to Mrs. McIldowny. Robert McIldowny and his family

continued to reside on the land till 1843, when he deserted his family and died shortly after.

Mrs. McIldowny had the land surveyed in 1844, and the boundaries of her claim marked upon the ground.

The defendant claimed under a sheriff's sale of the premises in 1844 upon executions issued upon a judgment recovered against John A. Smith in 1837, and a deed by the sheriff to George Bortz acknowledged on the 5th March, 1844; and a deed from Bortz and wife to S. M. Barclay, Esq., dated 11th February, 1846. Proceedings were commenced before two justices of the peace by Barclay against the plaintiff, to obtain possession, and on the 11th April, 1846, judgment was entered in his favour. On the same day Mrs. McIldowny accepted a lease of the premises for one year, in which the proceedings before the justices were recited. The subscribing witness to the lease testified, that at the time the lease was signed Barclay promised her that she should live there her lifetime, and that she refused to sign it until that promise was made. She remained until 1849, when she surrendered the possession.

The defendant called George James as a witness, and offered to prove by him that he purchased the land at sheriff's sale at the instance of John A. Smith, who furnished the money, and that he afterwards made the assignment to Mrs. McIldowny, at Smith's request, and the conversation he had with Smith which led to the payment of the purchase-money by the latter.

To this evidence the plaintiff's counsel objected that the declarations of John A. Smith cannot affect this plaintiff, and also because the witness has, for a valuable consideration, transferred and sold the premises by a deed under seal to the plaintiff. The objections were overruled, the evidence admitted, and at the instance of plaintiff's counsel a bill of exceptions was sealed.

The defendant further offered to prove by George Bortz, that while the property was up for sale in 1844, as the property of Smith, he had a conversation with George James, who then told him he had bought the property for Smith, who had paid the purchase-money, and advised the witness to buy, which he did.

This was likewise objected to, but admitted by the court, and a bill of exceptions sealed at the instance of plaintiff's counsel.

The defendant also offered to prove by John May and others, the declarations of Robert McIldowny after the sheriff's sale made in 1828, how he held the land; that he held as a tenant under Smith, and that such declarations were made while he was living on the land. It was objected to by plaintiff's counsel, but the court admitted it and sealed another bill of exceptions.

George Bortz proved that at the time he sold the land to Barclay in 1846, he communicated to him that the title to the land was in dispute, and was claimed by Mrs. McIldowny; to

[McIldowny *v.* Williams *et al.*]

which Barclay replied, " that lawing was his trade, and he would take it."

The court below (KIMMELL, P. J.) directed the jury to find a verdict for the defendants.

The plaintiff sued out this writ, and assigned for error, That the court below erred in admitting the testimony of George James, the declarations of James and Smith, and the declarations of Robert McIldowny, made after the sale to affect the plaintiff in this case.

*Cessna*, for plaintiff in error.

*Mower* and *Russell*, for defendants in error.

The opinion of the court was delivered by

ARMSTRONG, J.—Robert McIldowny took possession and made an improvement on the land for which the ejectment in this case was brought, in the year 1826. He continued there with his family cultivating the land until about the year 1843, when he deserted them and died soon after. His wife continued in possession until the spring of 1849, when she was obliged to leave under a lease given to Barclay. On the 2d of September, 1826, judgment was obtained against Robert McIldowny, in pursuance of which the land was sold by sheriff Davis to George James, who received the sheriff's deed on the 29th of November, 1828, and on the 24th of February, 1845, transferred the same by endorsement thereon to " John Smith, agent for Maria McIldowny, for her own and separate use." This was the plaintiff's title.

The defendant, Hilly Smith, who was tenant and devisee of M. Barclay, sets up in defence that judgment was obtained against John Smith on the 14th of January, 1837, on which the land in dispute was levied on as his property and sold at sheriff's sale on the 5th of March, 1844, to George Bortz, who by deed of the 14th of February, 1846, conveyed the same to S. M. Barclay, under whom the defendants claim.

The first error assigned is to the admission of George James as a witness to prove the declarations of John A. Smith. " The declarations of a person while in possession of land against his title, are always admissible, not only against him, but against those who claim under him :" 3 *Rawle* 438. But John Smith was not in possession, nor was he the owner at the time of the declarations made. " After a person has parted with his interest, his declarations are not evidence to impeach the title derived from him :" 1 *S. & R.* 526. Long before George James was called to testify, he had for value received transferred his sheriff's title to Maria McIldowny, without informing her of anything that had passed

[McIldowny v. Williams et al.]

between him and Smith. Such declarations might be evidence against Smith in a suit to which he was a party, to affect such interest as he might have; but not to affect the plaintiff who was not cognisant of what passed between Smith and witness. George James having transferred by deed of assignment all his interest in the premises to Mrs. McIldowny, he could not afterwards be permitted by his own testimony to impeach or destroy the title thus conveyed; and if so, whatever may have been the declarations of Smith, tending to show title in himself, they could not be proved by James. "Evidence of declarations or acts of a grantor, subsequent to his deed, are not admissible to defeat the grant:" 9 S. & R. 47.

The second error assigned relates to the admission of George Bortz to prove the declarations of George James. As James, at the time the declarations were made, held the legal title, and had not yet conveyed to plaintiff, we cannot say the evidence should have been excluded; but how far it would have affected her, she having received the conveyance without any knowledge of such declarations, would be for the jury to say.

The third error refers to the admission of declarations by Robert McIldowny, made after the entry of judgment against him. But as the court withdrew this from the consideration of the jury, the plaintiff has nothing to complain of. "Where evidence has been improperly admitted, and then withdrawn, its admission is not the subject of a writ of error:" 8 W. & S. 401; 4 Barr 317.

The fourth error assigned is, that the court directed the jury to find for the defendants. After the charge had been delivered, in which all the disputed facts were submitted to the jury, the court then concluded to order a verdict for the defendants. It is without doubt the law, that, "when no evidence of a disputed fact is given, it is the duty of the court so to instruct the jury." And it is equally well settled, that if there is any evidence at all, it must be submitted to the jury; and where the evidence is circumstantial, and there are facts on both sides, it is peculiarly the duty of the jury to determine their weight and value: 9 Harris 315. And where evidence is given of a fact, whether the evidence as to it be clear or slight, though the court may express an opinion upon it, the evidence should be submitted to the jury: 8 Harris 210; 10 Harris 431.

The plaintiff had certainly shown evidence of title in herself. Her husband had settled as an improver on the land in 1826. His interest had been sold at sheriff's sale, purchased by George James, and transferred to John A. Smith, agent of Maria McIldowny, for her own separate use. He therefore held the title in trust for her; and Samuel Bortz, at her request, in June, 1844, ran and marked the boundary of her improvement. Defendants repudiate the trust, and say that Bortz, under whom they claim,

[McIldowny *v.* Williams *et al.*]

was an innocent purchaser of the land as the property of Smith without notice; that at the time of the sale to Bortz, he was told by James that it was Smith's land, and that he had paid the money for it. On the other hand, John A. Smith proves, that before the sheriff's sale in 1828, he requested James to buy the land; told him he (Smith) would pay for it. And further said to him: "but when you buy it, you must convey it over to Mrs. McIldowny as her property;" that James went to the sale and bought it, and he (Smith) paid for it in May, 1832. He also says: "I got James to buy the land for them; I never owned it; I never went into possession; and from 1828 to 1832 I was solvent." This evidence is in conflict with the testimony of James, who omits to state that if he became the purchaser he was to convey it over to Mrs. McIldowny. It also conflicts with the conversation of James as detailed by Bortz. Did Bortz relate all the conversation he had with James? Did James state all that was said to him by Smith? Did Smith speak truly? These questions could be settled only by the jury. If Smith was solvent in 1828, and at the time of the sheriff's sale to James, he had a right to make the arrangement referred to for the benefit of Mrs. McIldowny, as it could not interfere with creditors. But was Bortz a purchaser without notice? He bought the land as the property of Smith, who never had possession, and with the knowledge that Mrs. McIldowny was then and had been in actual and continued possession for upwards of seventeen years. Surely this was enough to put him on inquiry, particularly as he swears he "knew the land before the sale; knew she lived on it; and knew she claimed it."

How, then, stands the matter with Barclay? After Bortz purchased, he sent his tenant to the plaintiff to see if she would give up possession. And he says: "When I sold to Barclay, he asked me if I had possession? I told him no. I told him Mrs. McIldowny claimed. Barclay said lawing was his trade, and he would take it." It would be going too far therefore to say, as a matter of law, that Barclay was an innocent purchaser. On due consideration of the whole evidence, I do not think it presents a case which would justify the court in directing a verdict for the defendants. There were facts which should have been left to the determination of the jury.

The fifth error is dependent on the fourth. The judgment entered on the verdict was wrong. The sixth is not sustained.

Judgment reversed and *venire de novo* awarded.