# Eshelman *against* Witmer.

Upon a sale of land, in a proceeding in partition, by an order of the orphan's court, for cash, the administrator has no power to change the terms prescribed by the court, and extend the time of payment: if he do so there will be no lien upon the land for any unpaid purchase money, the payment of which could be enforced by ejectment.

APPEAL from the circuit court of *Dauphin* county.

This was an ejectment by John Eshelman and others, heirs of Christian Dellebach deceased, against Joseph Witmer, for a tract of land. Dellebach died seised in fee of the land; upon the application of one of his children to the orphan's court for a writ of partition and valuation, the matter was proceeded in to an order of sale, which was that the land should be sold *for cash;* to which the administrator made return "that he exposed the land to sale, and sold the same to Ulerich Share at and for the sum of 7 pounds 14 shillings per acre, payable as follows, to wit: one-fourth part of said purchase money within four weeks from the sale, and the residue on the 1st of April 1811, when possession is to be given, and the title made to the purchaser; and sold the same subject to the remainder of the purchase money and interest due to the commonwealth, he being the highest and best bidder, &c." This report and sale were confirmed by the orphan's court; and a deed was made to the purchaser by the administrators, which contained an acknowledgement of the receipt of the purchase money. The administrator took a bond from the purchaser for 740 dollars, which was the one-third of the purchase money, the interest of which was payable to the widow. This ejectment was brought after the death of the widow, and the object was to enforce the payment of this bond. The defendant, Witmer, was a purchaser from Share, with notice that this bond was unpaid.

Chief Justice Gibson, before whom the cause was tried, directed a verdict to be given for the plaintiff, and reserved the points to be argued *in bank.*

*Alricks*, for appellant, cited, Hawk *v.* Geddes, 16 *Serg. & Rawle* 28. *Harris*, contra.

The opinion of the Court was delivered by

GIBSON, C. J.—Though my object at the trial was no more than to put the cause in a shape that would obviate, in any event, the necessity of sending it to another jury, I certainly supposed there was a lien which might be enforced against the purchaser; but the argument has led to a different conclusion. By the act of 1804, which directs the sale, the court is required, at the return of the order, to vest the estate in the purchaser subject and liable to the payment of the purchase money, *according to the terms prescribed by the court* in the order of sale. The act undoubtedly gives a lien where the terms are to sell at a credit; but that would be superfluous where the title is to be withheld till the purchase money is paid. It was urged with much plausibility at the trial, that an order to sell for cash is but an order to sell for a cash price; and that to leave the purchase money at interest, in the hands of the purchaser, is entirely consistent, in ordinary transactions, with the notion of a cash sale. The administrator may undoubtedly do so, but at the risk of himself and his sureties. Such an arrangement is virtually a loan; and it is an affair with which the children have no concern. Usury is defined, by the British statutes, to be the taking of more than the interest prescribed on a "loan" of money: and these, though strictly construed, have been held to embrace the forbearance of any debt, whether for money advanced or property sold: our own statute, *ex majori cautela*, uses the words "loan or *use*." If the administrator, then, might lend the purchase money for eighteen months, he might lend it for twenty years; and if he could bind the children by such an arrangement, the sale would still be at a credit, and in substantial contradiction of his authority. It is clear that the lien is for the protection of the children, and not of the administrator, who incurs no risk when he acts within the terms of his order; and when these indicate a sale for cash, his course is a plain one. He is not bound to exact the price at the close of the biddings, but at the tender of the conveyance, for the preparation of which a convenient time is to be allotted; when, if the purchaser fail to pay, the title may be retained during the pendency of a suit against him for the purchase money, or the land may be returned unsold for want of bidders. In either event the children would not require the protection of a lien. They would have required it on the postponement of payment, after a sale for cash, had the law thrown them on the naked responsibility of the administrator, but it has interposed the bond or recognizance of a surety. As between them and the administrator, the money is, in contemplation of law, in his hands, and on his failure to pay it over, recourse may be had to his surety. It is only between the administrator and the purchaser that it can be considered outstanding; and the lien was certainly not given to secure

[Eshelman v. Witmer.]

him in putting out a fund which ought to be in court.　It is impossible not to see that this suit, though brought in the names of the children, is effectively the suit of the administrators and their sureties ; and as they have no lien they cannot recover.　If they should turn out to be insolvent, it would be no less their suit exclusively ; for all that could be said would be, that the protection originally provided for the children, as adequate to the end in contemplation of law, has proved to be otherwise in point of fact ; but that would not entitle them to any other recourse than what is provided.　The direction, then, ought to have been in favour of the defendant.

Judgment reversed, and a new trial awarded.