## Dillebaugh's Estate.

4 w 177
179 481

4 w 177
182 411

Watts.
4 w 177
f196 300

An administrator is not chargeable with the consequences of a disastrous exercise of his discretion, unless it be accompanied with such negligence as raises a presumption of wilful misconduct. But if upon a sale of real estate, by order of the orphan's court, he leave a portion of the purchase money in the hands of the purchaser, by reason of which it be lost, he shall account for it.

In the case of the claim of a widow, for interest on one-third of the purchase money of her husband's real estate, sold by an administrator, the statute of limitation cannot be applied to bar her right to recover.

APPEAL from the decree of the orphan's court of *Dauphin* county.

Ann Dillebaugh, the widow of Christian Dillebaugh deceased, on the 3d of May 1831, presented a petition to the court, for a citation to Christian Ober and Henry Ober, administrators of said deceased, to appear and make distribution of the balance of their administration account, 2231 dollars 94 cents, settled the 4th of May 1811. The widow claimed the interest of 740 dollars, payable to her annually, from the year 1817, up to which time she had received it. The administrators appeared; relied upon the statute of limitations, presumption of payment from the lapse of twenty years since the account was settled, and objected to the orphan's court trying the same, because the petitioner had her remedy at law, on the recognizance of the administrators. The administrators also petitioned the court to review their administration account, settled in 1811, in order to discharge them from liability for the sum of 740 dollars, which they had never received, and which was not recoverable, because of the insolvency of the purchaser of the land.

The facts appeared to be these : Christian Dillebaugh died in 1798, leaving a widow and family of children, some minors. Christian Ober and Henry Ober took letters of administration on the estate, Henry being a son-in-law. The said administrators settled an account of his personal estate in 1803, which has all been distributed. In 1809, Peter Dillebaugh, one of the sons, petitioned the orphan's court for a valuation of the real estate; the widow was not mentioned in said petition, nor in the inquisition, nor any of the proceedings had in the orphan's court, which proceedings were conducted by Messrs Ellmaker and Elder; the petition of Peter Dillebaugh being in the handwriting of Mr Amos Ellmaker, and the return of sale by administrators and the administration account in the handwriting of Thomas Elder. The confirmation of the sale, in 1810, was on motion of Ulrich Share, the purchaser. On the 26th of January 1811, the administrators exhibited their account, which

IV.—X

[Dillebaugh's Estate.]

was passed on the 4th of March 1811, by the orphan's court.    On the 10th of May 1811, the money, viz. two-thirds, was paid by Ulrich Share, at the office of Elisha Greene, Esq., now deceased, to the heirs of Christian Dillebaugh, and the administrators, who had met at that place ; and Share got a deed from the administrators, one of them, Henry Ober, only, signing the receipt for the purchase money in full, and the administrators got a release from the heirs for the two-thirds of the purchase money ; said deed and release, dated the 10th of May 1811, both witnessed by and acknowledged before Elisha Greene, Esq., and the said deed recorded on the 23d of March 1820.    A bond was given by Ulrich Share, the purchaser, to Christian and Henry Ober, administrators of Christian Dillebaugh deceased, for one-third, viz. 740 dollars, dated the 10th of December 1811, payable on the following 1st of April, with interest from the 1st of the ·past April : on the bond there were six indorsements of interest paid yearly ; from the last, it appears that interest was paid to the 1st of April 1817.    To whom paid was not mentioned, but says received for the use of widow Dillebaugh.    Ulrich Share was the owner of a valuable grist mill and considerable landed estate, and was reputed to be very wealthy, until September 1817, when he gave, by confession, on the same day, a number of judgments to the amount of 18,000 or 20,000 dollars ; shortly after, his property was all sold, and he left the country insolvent—since supposed to be dead. Widow Dillebaugh, after the sale of the real estate in 1810, lived among her children, one of whom was the wife of Henry Ober, and has died since this appeal was taken, having first made her will.    In 1826 the widow brought an action of dower, but failed to recover.

The court below (Blythe, president) refused the petition of the administrators for a review, and decreed that they should "forthwith pay to Ann Dillebaugh, the widow of said deceased, the sum of 622 dollars, being the interest which has accrued since the 1st of April 1817, until the 1st of April 1831, on the sum of 740 dollars, the one-third part of the net proceeds of the land of said deceased ; and also to pay to her annually, thereafter, during her life, on the 1st of April, the sum of 44 dollars 40 cents, the interest, &c."

*Ayres* and *M'Clure*, for appellants, assigned the following reasons why the decree of the orphan's court should be reversed.

1. That in this case, more than twenty years having elapsed, from the 4th of March 1818 to the time this motion was made, the orphan's court ought not to have taken summary measures to compel the payment of money which it might fairly have been presumed that the applicant had already received ; and the court ought to have left the appellee to her remedy on the recognizance in the common pleas.

2. That having brought her action of dower against Witmer and Lynch, the occupiers of the land, to which they put in the pleas of accord and satisfaction, and issue being taken on the said pleas, and

[Dillebaugh's Estate.]

a verdict for the defendants, she could not, by her attorney, prove that the verdict of the jury was rendered on other grounds, when the finding was conclusive that she had been satisfied.

3. That the act of limitations is a bar to any decree of distribution of the balance in the hands of the administrators; and the fact that the administrators had, at a previous time, given a recognizance, does not take the case out of the statute; the remedy, on the recognizance, being an action at law, and not a summary proceeding in the orphan's court, after a lapse of twenty years.

4. That the orphan's court ought either to have sustained the appellants' application for a review; or, if they had had any difficulty, directed an issue to determine whether the acts of the widow did not amount to an acquiescence in the arrangement made between her children, the heirs, and the administrators, as to the one-third of the purchase money being left in Share's hands.

5. That it would be against equity to put a loss occasioned by the insolvency of Share, upon the administrators, when the evidence shows that they took the same care of the widow's interest that they took of their own property; Henry Ober, one of them, being entitled, in right of his wife, to a part of the third, payable at the widow's death. In justice and equity, therefore, the loss ought to be left to rest on those who have had the misfortune to suffer by it in the first instance; and from this sense of justice, her son Christian, in his de position, says, " nor does his mother desire that they should pay any part of the principal or interest coming to her, but still continues to look to the land for her money."

*Harris*, for appellee.

PER CURIAM.—An administrator is not chargeable with the consequences of a disastrous exercise of his discretion, unless it be accompanied with negligence so gross as to raise a presumption of wilful misconduct. Here, however, the order being to sell for cash, precluded every thing like discretion; nevertheless, the administrators thought proper to leave a portion of the purchase money with the vendee, by reason of which it has been lost. At whose risk are they to be considered as having acted? The answer is in the administration account—at their own; and there is no reason to doubt the correctness of the principle on which they charged themselves. Had the widow consented to the arrangement, the case might have been different as to her interest; and we intimate no opinion in respect of the claim of the heirs to the principal. No presumption of payment arises from lapse of time, as the last payment was in 1817; and the statute of limitation is out of the question in the case of a trust. Neither can her unsuccessful action of dower preclude her on principles of election; for she had no election to make. And as to awarding an issue, or granting a review, these were matters of pure discretion properly exercised in the particular instance.

Decree affirmed.