## Hise *against* Geiger.

A proceeding in partition under the intestate laws, by which the estate is sold by order of the Orphans' Court, creates a lien upon the land for the unpaid purchase money, independent of a mortgage or any other security which may have been taken; and such lien can only be discharged by payment to the heir. A payment to the administrator, to whom the order was directed to sell the land, and to whom a bond and mortgage was given, will not discharge the lien which the law creates in favour of the heir; and this rule is equally applicable to the purchaser and his alienee.

ERROR to the special Court of Common Pleas of *York* county. John Hise against Barney Geiger, with notice to Abraham Haldeman. John Hise, the father of the plaintiff, died intestate, seised of a mill and tract of land, and leaving a widow and six children. In 1819, a petition was presented by one of the children for a writ of partition and valuation, which was so proceeded in as that the property was valued, and all the heirs refused to take it at the valuation; and in 1826 the Orphans' Court granted an order for its sale, which was directed to Jacob Hise and John Lanman, administrators of John Hise deceased; and the court prescribed the terms to be, " one-half of the purchase money to be paid in hand, and the remainder in three equal annual payments; one-third of the whole purchase money to remain a lien on the premises in the hands of the purchaser, the interest whereof to be paid to the widow during her life, and after her death the principal to be paid to the legal heirs of the intestate in equal portions." In pursuance of this, the administrators entered into a recognizance with security conditioned that they would discharge the duties which devolved upon them, and faithfully pay over the proceeds of the sale. They sold the land to Barney Geiger, the defendant, for $9002, and made return thereof, and the same was confirmed by the court. The purchaser gave bonds and a mortgage on the land to the administrators to secure the purchase money; one of these bonds was conditioned for the payment of the interest of one-third of the money to the widow, and the principal at her death to the said administrators for the use of the heirs. The widow died in August 1829, and in September 1829 Barney Geiger paid to the administrators the whole amount of the principal sum which was payable at her death, and satisfaction was entered upon the mortgage, and the bond cancelled. This was an action of debt by John Hise, founded upon the decree of the Orphans' Court, in which he claimed to recover the one-sixth part of the principal sum which was payable to the heirs upon the death of the widow. Barney Geiger had sold and conveyed the

VII.—35

[Hise v. Geiger.]

mill and land to Abraham Haldeman, who was notified as a terre-tenant. The question in the cause was, whether the payment of the money to the administrators, and satisfaction of the bond and mortgage, was a good defence to the action of the heir? The court below was of opinion that the plaintiff was not entitled to recover, and directed a verdict for the defendant.

*Mayer*, for plaintiff in error, cited 2 *Penn. Rep.* 355; 5 *Rawle* 108; 2 *Watts* 264; 10 *Serg. & Rawle* 33; 16 *Serg. & Rawle* 23; 1 *Watts* 280; 3 *Rawle* 183; 4 *Wash. C. C. Rep.* 92; 3 *Watts & Serg.* 276; 9 *Watts* 529; 1 *Dall.* 420.

*Alricks* and *Chapin*, for defendant in error, referred to the intestate laws of 1794, 1804, 1807 and 1834, and 6 *Watts* 33.

The opinion of the Court was delivered by

ROGERS, J.—This is the case of a sale of land under an order of the Orphans' Court, in a proceeding in partition. The court directs the administrators to sell the property for the highest and best price that can be obtained for the same, and that the terms of sale shall be, " one-half the purchase money in hand, and the remainder in three equal and annual payments; one-third of the purchase money to remain a lien on the premises in the hands of the purchaser, the interest thereof to be paid to the widow of the said intestate annually during her natural life, and after her death the principal to be paid to the legal heirs of said intestate in equal proportions." The sale was confirmed by the court, and the title decreed to the purchaser, subject to the payment of the purchase money agreeably to the terms prescribed in the order of sale. In all respects, the court have conformed to the Acts of 19th April 1794, the 2d April 1804, and the 7th April 1807. These Acts direct that the share of the widow shall remain a charge on the land in the hands of the purchaser. The court orders it to remain a lien. The second section of the Act of the 2d April 1804 directs that upon such sale, (that is, a sale under an order of court in a proceeding in partition), &c., and return thereof, &c., it shall be the duty of the court, and they are hereby required on motion of the purchaser, to confirm the sale, and to decree the estate in the premises so sold to be transferred and vested in such purchaser as fully as the intestate held the same at his decease, subject and liable to the payment of the purchase money' according to the terms prescribed by the court in the order of sale; and the said court shall cause the proceeds of sale to be distributed in such manner as, according to law and justice, may be proper. In the Act of the 7th April 1807, it is directed that upon the decease of the widow, the whole value of her purpart shall be distributed among all the children or representatives, in proportion to their shares according to law. That the court had the power to make

[Hise v. Geiger.]

this decree, cannot admit of doubt; and that it was their duty to direct that the interest of the widow should remain a lien on the land, and that the same should be paid after her death, is equally plain. In language which cannot well be misunderstood, the court decreed that the principal, after the death of the widow, shall be paid to the legal heirs of the intestate, in equal proportions. To enforce this decree, this action is brought. By the decree, a lien is created on the land, whether it be in the hands of the purchaser or his assignee, in favour of the heirs of the deceased. Of the benefit of this lien they cannot be deprived, as is decided in *Medlar* v. *Aulenbach*, (2 *P. R.* 355). The lien remains, notwithstanding the recognizance and mortgage executed by the purchaser, which, as is held in the case cited, are additional, collateral and cumulative remedies or securities for the debt. 2 *Watts* 263; 5 *Rawle* 108. But to whom is the money to be paid? to the heirs or the administrator? Doubtless, if there be any meaning in language, the interest is to be paid to the widow, and after her death the principal to the legal heirs of the intestate. As the widow may die at any indefinite time, it is right that the security should be a real security, and that the money should be paid to those who are legally entitled to it. Why pay it to the administrator, who is but the instrument of the court to effect the sale, and who has no power to change the terms prescribed by the court, much less to alter its decree by which the purchaser is ordered to pay the one-third of the purchase money to the widow and heirs. *Eshelman* v. *Witmer*, (2 *Watts* 263). To permit this, would enable him to deprive the persons in interest of the lien which it was the intention of the law and the decree of the court to give them. This, it must be recollected, is a proceeding in partition, not an order of sale for payment of debts. This whole proceeding is on the supposition that the land was not needed for payment of debts. If it should subsequently appear that the money paid by the purchaser was used by the administrator, it may constitute an equitable defence. But, so far as it appears, there were no debts, at least such as were liens on the land; for the seven years seem to have expired before the sale.

We cannot agree that the assignee is in any better situation than the original purchaser. The lien is on the land, from which it cannot be discharged unless it goes into the hands of a purchaser without notice. But this cannot be, as the decree of the court is the foundation of the title, of which of course the assignee has notice.

Judgment reversed, and *venire de novo* awarded.