## Hillbish's Appeal.

D. died seised of certain real estate, and leaving a widow and nine children. In 1836 said real estate was divided by proceedings in partition. The inquest appraised a purpart and D.'s son George took it at the valuation. The court approved the security George offered for the payment of the proportions of the widow and other heirs, and adjudged the purpart to him, his heirs and assigns for ever, " he having entered the usual securities to pay the other heirs according to law." The record omitted to state the form of the security, and neither bond nor recognisance could be found. In 1858 the widow died. In 1860 H. obtained a judgment against George. In 1862 George confessed a judgment to the heirs in an amount that covered the one-third allotted to the widow and the proportions of the heirs. This judgment was not duly revived. After the decease of George, the real estate was sold under an order of the Orphans' Court, and H. claimed that he had the prior lien upon the fund. The auditor allowed the heirs their respective proportions in the third allotted to the widow, with interest from her death, but decided that the lien of the heirs to their own proportions did not extend farther back than to the judgment confessed to them by George, and that that judgment, not having been revived, the judgment, of H. was entitled to priority. The court below held that the proportions of the heirs should have been paid before judgment creditor. *Held*, that this was error.

March 20th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Schuylkill county*: Of January Term 1879, No. 251.

Appeal of Samuel Hillbish from the decree of the court upon the report of the auditor appointed to marshal the liens against the real estate of George Deibert, deceased.

The real estate of John Deibert, deceased, was divided by proceedings in partition, and purpart A, containing eighty-two acres and one hundred and forty-two perches, was, on March 27th 1837, awarded by the Orphans' Court to George Deibert, at the appraised value of $38 per acre. It appeared that Henry Shelly was offered by George Deibert, and approved by the court, " as his security for the payment of the widow and other heirs' proportion thereof, agreeably to the Act of Assembly," and the court thereupon "adjudged the said purpart, marked A, to the said George Deibert, and to his heirs and assigns for ever, he having entered into the usual securities to pay the other heirs according to law." This order was attested by Joseph Morgan, clerk of the Orphans' Court, and was the only record connected with the partition that could be found.

Christina Deibert, widow of said John Deibert, deceased, died on April 17th 1858.

On June 16th 1862, George Deibert confessed a judgment in favor of Jacob Deibert and the other heirs of John Deibert, deceased, in an amicable action in debt on recognisance, executed by the defendant to the Commonwealth of Pennsylvania, for the use of the widow and other heirs of John Deibert, deceased, to secure their

respective proportions of the appraised value of that part of the real estate of John Deibert, deceased, marked A, containing eighty-two acres and one hundred and forty-seven perches, dated ———, and filed in the register's office of Schuylkill county.

The whole amount for which judgment was confessed by the agreement then entered into was $2705.52, which included the amount unpaid to some of the heirs for their respective interests in the purpart outside of the widow's dower.

This judgment was revived May 25th 1867, and again June 14th 1872, but was not duly revived thereafter.

Prior to June 17th 1862, the date of the entry of above judgment, viz. : on 17th March 1860, Samuel Hillbish entered a judgment confessed to him by George Deibert, for $1044. Upon this a scire facias to revive, issued 11th February 1865; the judgment was also revived 16th February 1870, and again on February 1st 1875.

George Deibert having died, an application was made by his administrator for the sale of his real estate, consisting of the purpart of eighty-two acres and one hundred and forty-two perches, before mentioned, for the payment of debts.    At this sale, Samuel Hillbish became the purchaser for $4130; of this amount he paid in cash $1665, and claimed that he was entitled to receipt for the balance on his judgment as a lien-creditor of George Deibert, deceased, under the Act of 20th April 1846, sect. 1, relating to lien-creditors becoming purchasers at judicial sales : Purd. Dig. 655, Pamph. L. 411.    Fergus G. Farquhar, Esq., was appointed auditor to marshal the liens against the estate, and the exceptions to his report raised the questions in the case.

The heirs of John Deibert, deceased, resisted the claim made by Hillbish, to have the balance of the purchase-money appropriated to his judgment against George Deibert.    They contended that George Deibert entered into a recognisance to secure to them their respective interests in purpart A, awarded to him by the Orphans' Court, and that the auditor erred in deciding that their right extended no farther back than to the judgment confessed to them by George Deibert, and that, therefore, the judgment of Hillbish was entitled to priority.

The court, Pershing, P. J., in passing upon the auditor's report, inter alia, said :

" What was the nature of the security given by George Deibert? The giving security for the shares of the other heirs was a condition precedent without the performance of which no estate vested in George Deibert : Smith v. Scudder, 11 S. & R. 325. If, therefore, he gave no security, the judgment of Hillbish would be of little or no value as a lien.

" The act does not limit the discretion of the court as to the kind of security that may be acquired under the 37th, 38th and 39th

[Hillbish's Appeal.]

sections of the Act of 29th March 1832. The party accepting is to give real security by recognisance or otherwise, to the satisfaction of the court. The action of the court, in awarding purpart 'A' to George Deibert, 'he having entered into the usual securities to pay the other heirs according to law,' the auditor discusses at length, and decides that there is no evidence that the security in this case was a recognisance, and, therefore, holds it was a mere personal obligation on the part of George Deibert to the other heirs. But I think the evidence is stronger that a recognisance was the security given, than that it was a bond or other personal obligation.

"As far back as the case of Walton *v.* Willis, 1 Dallas 265, the Supreme Court said that where an heir-at-law takes an intestate's lands at a valuation, the Orphans' Court ought, instead of bonds, to take recognisances by which the lands themselves would be bound for the distributive shares. That this was generally followed by the lower courts, and a recognisance adopted as the usual security, is apparent from the report of the commissioners, who drafted the Act of 29th March 1832, relating to Orphans' Court. In their remarks on the 37th section, they say : ' We have introduced the word *recognisance* into the latter clause of this section, that being the kind of security which is most usually taken, and, it appears to us, the most proper to be taken, although we have not felt ourselves authorized to limit the authority of the court to this mode.' That the usual security required by the court of George Deibert, in accepting the purpart awarded to him, was a recognisance, was expressly acknowledged by him in the judgment confessed to the other heirs. All the parties seemed to have acted on that understanding. Some of the heirs have been paid in full for their interests, exclusive of the widow's third. As to the others the balances were ascertained and set forth in the judgment. No bond or personal obligation is heard of in this settlement between the parties. If a single bond was given, or separate obligations were given to each of the heirs, they would, of course, be in their possession, and the judgment, it would be fair to presume, would be based upon it then, instead of an admitted recognisance. Notwithstanding the able argument of the auditor on the point, we think he erred in his ruling that the security given in the Orphans' Court by George Deibert was a personal obligation and not a recognisance.

" The parties immediately interested on the one side and the other, were in a position to know what kind of a security was given.

" It is to be regretted, however, that we are now compelled, in some degree, to guess what are the rights of the parties, when a single word, in the proper place, at the proper time, would have avoided all this difficulty.

[Hillbish's Appeal.]

"In Cubbage v. Nesmith, 3 Watts 314, it was held that a minute that a recognisance was taken and filed was amply sufficient to give notice to purchasers or creditors of the existence of the lien. In the case in hand, if the entry on the docket, signed by the clerk of the Orphans' Court was not of itself actual notice, it seems to me to have been amply sufficient to put Hillbish on inquiry. A party is not to be deprived of an estate which he has a right to take, because of neglect on part of the court, or the clerk fails to do his duty: Gregg's Appeal, 8 Harris 148: see also Riddle & Pennock's Appeal, 1 Wright 177.

"The judgment confessed by George Deibert to the other heirs, on 17th June 1862, includes the item of interest from May 3d, 1838, to June 7th 1862, $1522.96, less amount of $372.72, credited on account of interest; arrears of interest due in lifetime of the widow to go to her administrators, not to next of kin: Edwards v. Hooper, 2 Whart. 420, and other cases. The auditor is correct in ruling this out as against the judgment of prior lien-creditors.

"The auditor has correctly allowed to the heirs of John Deibert, deceased, their respective proportions in the statutory dower of Christian Deibert, deceased, his widow, with interest from the date of her death.

"In addition, I have come to the conclusion that he should have allowed to those of the heirs who were not paid in full in the lifetime of George Deibert, for their interest in the purpart 'A,' exclusive of the dower, viz. : the two-thirds, the amount admitted to be due them severally by the terms of the judgment confessed by George Deibert, and entered on record on June 15th 1862, and this in preference to the claims of the judgment-creditors named in his report. To the extent thus indicated the exceptions are sustained, and the report is hereby directed to be remitted to the auditor for correction in accordance with this opinion."

From this decree, Hillbish took this appeal.

*Hughes & Farquhar*, for appellant.—After the death of the widow of John Deibert the heirs had nothing further than a claim for the one-third of the appraised value of the purpart taken by George Deibert secured by a lien upon the land itself.

They did not proceed to obtain a judgment on this lien or claim, but accepted for the same a judgment against the same person against whom they held the claim or lien, and acquired the means of making all his estate both real and personal liable for such payment. This judgment then was a much higher security than the mere debt secured by a lien against the owner of the land. By accepting the judgment the right to sue upon the debt secured by the lien was gone : Jones v. Johnson, 3 W. & S. 276.

It is true that in said judgment given by George Deibert to the heirs, there is included also the amounts due them respectively on

the two-thirds of the appraised value not charged upon the lands, but they are not blended in the judgment, each item is set out separately, and therefore, the two indebtednesses are not blended, and the heirs of John Deibert, deceased, having obtained a judgment, *not upon*, but *for* the same debt as the lien, from the same person who as owner of the land was bound to pay the debt, the debt charged upon the land was merged in the judgment, and the rights of the heirs as to lien were confined to the rights conferred by the judgment.

The same reasoning will apply to the claim of the heirs to the amounts due them respectfully under the alleged recognisance, which they claim was given by George Deibert to secure to them the two-thirds of the appraised value of the lands taken. If any such recognisance ever existed it was merged in said judgment.

*J. W. Roseberry*, for appellant.—The record shows a decree of the court adjudging the purpart to George Deibert, his heirs and assigns, and that he had entered into the *usual securities*, and that Henry Shelly was approved of as security; but whether the security was a *recognisance* or *otherwise*, as required by the act, does not appear.

The usual securities required at the time of these proceedings, by the court of Schuylkill county, as well as the courts throughout the state were recognisances. The Act of March 27th 1832, on which these proceedings were founded, provides for proceedings on recognisances at some length as though they were the only securities required.

The decree of adjudication enjoining payment of the valuation money is a debt of record, and the statute gives to the widow and heirs a lien for the payment thereof, and suit may be brought upon such decree under the circumstances of this case without the production of the recognisance: Hise *v.* Geiger, 7 W. & S. 273. They cannot be deprived of the benefit of the lien: Medlar *v.* Aulenbach, 2 P. & W. 355. The legislature has prescribed no form for recognisances in the Orphans' Court, and therefore, an obligation of record in any form is sufficient: Riddle & Pennock's Appeal, 1 Wright 181.

" The lien of a judgment is limited by statute, but that of a recognisance is not—it is indefinite :" Ankeny *v.* Penrose, 6 Harris 193. A recognisance need not be entered on the Orphans' Court docket. A minute of it on the docket is sufficient to give notice to purchasers or creditors of the existence of the lien : Hartman's Appeal, 9 Harris 488.

With respect to the one-third of the valuation the act expressly declares that it shall remain charged upon the premises for the benefit of the widow during her life, and for the security of the heirs after death. It is not in the power of the court to divest

the liens of the widow and heirs in the teeth of an act so express in its provisions : Medlar *v.* Aulenbach, *supra.* It is a matter of no consequence what term of law may be applied to the interest of the widow and heirs ; it is sufficient to say that it remains a charge upon the premises without limitation as to time for the security of the widow and the heirs, subject only to the presumption of payment from lapse of time.

The judgment created no new lien, nor did it extinguish or affect the lien of the heirs, which continued as a lien, with the same force and effect as if the judgment had not been entered.

Mr. Justice MERCUR delivered the opinion of the court, May 5th 1879.

This is a distribution of the proceeds of the real estate of George Deibert, deceased. It was sold by his administrators in pursuance of an order of the Orphans' Court, for the payment of debts.

It had previously been owned by John Deibert, who died seised thereof. He left surviving a widow and nine children, George being one of them.

In October 1836, the Orphans' Court of Schuylkill county awarded an inquest upon the lands of which John died seised, with a view of making partition of the same. The inquest appraised this purpart, and in March 1837, George elected to take it at the valuation. The court approved the security he offered for the payment of the widow and other heirs' proportion thereof, and adjudged the purpart to said George and to his heirs and assigns for ever, " he having entered into the usual securities to pay the other heirs according to law." The record omits to state the form of the security, and neither bond nor recognisance can be found. In April 1858 the widow of John died. In June 1862 George entered an amicable action and confession of judgment in favor of the other heirs of John, for a sum agreed on as due " on recognisance executed by him to the Commonwealth of Pennsylvania for the use of the widow and other heirs of John Deibert, deceased." It included not only the one-third of the appraised value of this purpart, on which the widow was entitled to interest during her life, but also certain portions of the two-thirds decreed to be paid to the other heirs at the time of the partition, and which remained unpaid. This judgment was revived in May 1867 ; but more than five years elapsed before it was again revived.

Before the last revival the appellant obtained a judgment against George, which thus became a lien, and by due revivals continued such at the time of his death. Hence if the liens rested on the judgment alone, the one in favor of the appellant was the prior lien at the death of George. The learned judge held the evidence sufficient to prove that the security given was in the form of a recognisance ; but notwithstanding the confession of judgment, and

the omission to revive it within five years, that the recognisance was a continuing lien until the payment of the whole obligation which George assumed when the allotment was made to him. He therefore decreed that the unpaid portions of the two-thirds, as well as the third on which the widow drew the interest, should be paid in preference to any judgments subsequently recovered against George. This is assigned for error.

The 41st section of the Act of 29th March 1832, relating to the partition of the real estate of a decedent declares, "should the widow of the decedent be living at the time of the partition, she shall not be entitled to the payment of the sum at which her purpart or share of the estate shall be valued, but the same, together with interest thereof, shall be and remain charged upon the premises, if the whole be taken by one child or other descendant of the deceased, or upon the respective shares, if divided as herein before mentioned, and the legal interest thereof shall be annually and regularly paid by the persons to whom such real estate shall be adjudged, their heirs or assigns holding the same, according to their respective portions, to the said widow during her natural life, in lieu and full satisfaction of her dower at common law, and the same may be recovered by the widow by distress or otherwise, as rents in this Commonwealth are recoverable. On the death of the widow, the said principal sum shall be paid by the children or other lineal descendants, to whom the said real estate shall have been adjudged, their heirs or assigns, holding the premises to the persons thereunto legally entitled."

The Act of 19th April 1794, in substantially like language declared "the purpart of the widow shall be valued, and the same together with the interest, shall remain charged on the premises; the interest to be paid annually and at her decease the principal sum to be distributed and divided among the children, and representatives of the intestate." The character and duration of the widow's lien under this Act of 1794, received a careful consideration in Medlar et al. *v.* Aulenbach and wife, 2 P. & W. 355. It was there held that when the legislature thought proper to divest the right given to the widow, by the common law, they took effectual care of her interest by creating a statutory lien to the extent of the value of the purpart which with the interest was to remain charged on the purpart; and as the death of the widow might occur at an indefinite period of time, they had also extended the lien to the heirs and legal representatives. In this respect a distinction was made between the purpart of the widow and the shares of the heirs of the intestate. The latter are placed on a different footing. They are payable at a fixed and short period of time after the allotment. But as to the sum, on which the widow draws the interest, and to which the heirs are not entitled until after her death, the statute has stamped the same continued lien, as on the interest

[Hillbish's Appeal.]

which it produces. Nor does the fact that security was given for its payment by either bond or recognisance change the effect of the lien. It is merely cumulative to guard against accidents by fire or otherwise. It is collateral only, the law creates the lien: De Haven *v.* Bartholomew, 7 P. F. Smith 126. The lien thus created by statute for the security of the widow's rights, can no more be lost by the recovery of a judgment or merged therein, than the lien of a recorded mortgage is lost or merged by the issuing of a scire facias, and obtaining judgment thereon. Nothing less than payment discharges the lien. A sheriff's sale on a judgment obtained against the heir to whom the purpart was allotted, will not divest the widow's lien : Fisher *v.* Kean, 1 Watts 259. Nor will an actual payment to the administrator authorized by an order of court to sell the land, under proceedings in partition, discharge the lien which the heir has in the share allotted to the widow : Hise *v.* Geiger, 7 W. & S. 273. As, however, this preferred and continued lien does not extend to the portion which the heirs of John were entitled to on his death, the decree must be reversed in so far as it prefers the several sums due on two-thirds of the whole valuation, but in holding the heirs entitled to their respective shares in the one-third allotted to the widow, no error was committed.

　　　　　Decree reversed, and record remitted with instructions to decree distribution conformably with this opinion.